## CONSTRUCTION OF CONTRACT OF SALE.

[Circuit Court of Wood County.] .

WILLIAM A. GILLS v. SIMON GEORGE.

Decided, May 4, 1906.

*Sales—Absolute and Executory—Contract of Sale—Bailments—Passing of Title.*

A contract for the sale by A to B of twenty-two cattle, of a specified aggregate weight and at a named price per pound, payment not to be made for some months, during which time the cattle were to be fed by B and then re-sold to A at an increased price per pound, is not a bailment, nor is it an executory sale from A to B, but the sale is absolute and title passes, and loss from injury to the cattle while they are in the possession of B, and before the time fixed for their resale to A, must be borne by B.

WILDMAN, J. (orally) ; PARKER, J., and HAYNES, J., concur.

In the case of Gills v. George a very peculiar question is presented for our consideration, and one with regard to which it is not strange that the minds of intelligent men may not be in unison.

The case is presented upon the pleadings, an agreed statement of facts, and the ruling of the court below. It appears from the agreed statement that William A. Gills and Simon George, on November 3, 1904, entered into a transaction with regard to certain cattle. Gills was the owner of the cattle and they were delivered to the defendant, George, and a writing drawn between the parties, intended to be in duplicate. There is some slight variation in the phraseology, but they are substantially alike. The one before me reads as follows:

"Nov. 3d, 1904. W. A. Gills sold this day to Simon George, 22 cattle, weighing 20,259 lbs., at 3½c., to be paid for when taken back, 1905. Said George sells said cattle back to W. A. Gills, to be taken from 15 May to 15th June, 1905, price 5 cents per lb. Said George is to shrink 3 per cent. when taken up by W. A. Gills.

"(Signed)

"W. A. GILLS,
"SIMON GEORGE."

Each of the duplicates is signed by both parties. On May 14th, 1905, the barn in which the cattle were, was struck by lightning and a large number of them were killed, and others injured. The principal question here is, on which of the two parties the loss shall fall.

Let us analyze the first part of this contract, to ascertain, if we may, to what extent it embodies an executed transaction between these parties; that is, a transaction executed on the day of the delivery of the cattle to George. Perhaps I ought to stop long enough, however, to say that there is some dispute as to whether this writing constitutes only one contract between the parties, or whether there are two separate and distinct contracts.

The defendant, George, insists that these cattle were left with him in bailment, to be cared for and fed, and finally returned at the period mentioned in the writing, and that the difference between the amount recited as the payment for the cattle by him and the price which he was to receive, was really intended as a compensation for the care which he was to give to the property. On the other hand, it is insisted that Gill actually sold the cattle to George, that the sale was completed, and that George thereby became liable to pay the purchase-price of 3½ cents per pound for the number of pounds specified in the writing, to-wit, 20,259 pounds.

We do not deem it very important to discuss the question as to whether there is one contract or two. My own judgment is that there is but one contract, and that there would be but one contract if there were two writings, in one of which the obligation of Gills were stated and in the other the obligation of George, for it was but one transaction, no matter whether embodied in one writing or two. But the principal question is not thereby solved.

To determine the effect of a consummated transaction of November 3d, 1904, and the intention of the parties as to a transaction in 1904 let us see whether the phraseology of the writing may not be, to some extent, simplified. It is to be noted that a definite number of cattle is mentioned; a definite weight in pounds, to be paid for at a definite price per pound; which is as much as to say that William A. Gills has sold this day to

Simon George, 22 cattle for the agreed price of $709.06, because this is the amount ascertained by computation to be the sum which, under those circumstances, and if there were nothing else in this writing, would unquestionably be due from George to Gills as the purchase-price of the stock.

We are inclined to think that the mention of the number of pounds and the mention of the price per pound does not change this rule. If it had been indefinite, if there was something to be ascertained by weighing, or counting, or otherwise, so that it was not susceptible of mere computation to determine how much George was to pay, then an entirely different question would arise; but so far as we have proceeded with this contract, there is a statement that a sale was made of certain property at a certain definite price, and then we reach the provision as to the manner and time of payment. The writing says, "to be paid for when taken back by Gills." That is to say, that when, in the subsequent provision of the contract, in the other transaction provided for by its terms, the same stock should be surrendered by George and received by Gills, that then George is to pay the $709.06, subject, however, to another provision, and that is, that he is to receive something from Gills, and the contract proceeds to tell what that shall be. It shall be an amount not fixed and certain, not already determined, but it is to be determined by the weight of the cattle at the time they are so surrendered by George to Gills at a specified price per pound, subject to a shrinkage of 3 per cent. of the aggregate weight of the cattle at that time.

Our judgment, without dwelling longer upon the first branch of this contract, is that, by its terms, the parties having used the word "sold," a sale was effected, and George became the owner of the cattle.

It is well argued by counsel that the use of the word "sold" in the first branch of this contract, and the word "sells," in the second, is not conclusive of the question as to whether this was a sale or a bailment. We agree with counsel on this point, but we are not disposed to reject words used by the parties to a transaction, if they throw light upon what was intended. We think that to construe this contract as defendant would have us

construe it, requires the rejection of the word *sold* in one case and *sells* in the other, because, if counsel for defendant is right, there was no sale in the first place, and no agreement to sell in the other. Contracts are to be construed without the rejection or change of the phraseology used by the parties, if it can be done without prejudice to the sense apparent from the entire writing.

Now, it has occurred to us that, although Mr. Gills was a dealer in stock, and Mr. George was a farmer, having land adapted to the grazing or pasturage of cattle, and, although it was intended that the identical cattle should be returned at the time stated, by George to Gills, still the question may have arisen as to who should stand the loss in case there should be any injury to the cattle while in the possession of George; as, for instance, in case of some accident to them; or whose should be the loss in case of disease or death of a part or the whole of the herd. It is not probable that these parties had in their thoughts such an extraordinary event as that which did occur—the striking of the barn or place where the cattle were by lightning, and the destruction of a large number of them; but it is altogether likely that Mr. Gills, the owner of the stock, when he entered into this deal with Mr. George, desired that Mr. George should be accountable for the proper care and treatment of the stock to prevent diseases, and also for care in their preservation as against any sort of danger. He was willing to rely, to a certain extent, upon the personal interest of George to preserve the stock and increase their weight by the treatment which he should give to them, and to induce the care of this stock by reason of such personal interest, the additional price per pound was stipulated as a payment to George upon redelivery or sale of the stock to Gills. But provisions in contracts that they should be held at the owner's risk, or that one party or the other shall suffer loss in case of destruction by fire, are not very uncommon in various classes of contracts, and here, if this had been a bailment, it would have been not unnatural to have a clause inserted as to who should suffer the loss, in case of disease or injury. The parties sought to provide, upon the question as to who should suffer in case of loss, by an entirely different provision. They did not say that the defendant, George, receives the stock to hold and care for

during this period, and is to receive certain compensation, and during that time they are to be held at the risk of the one party or the other, as regards injuries or otherwise, from the elements; but instead of that they provide that the transaction shall be a sale, and George shall become the owner, thus guarding Gills from loss; for, during the time, he would have no opportunity to see that the cattle were protected from injury.

The question remains as to whether, by the terms of this arrangement, George resold to Gills, the title then passing, or whether it was an executory sale, that is, a contract by which, when certain things were done, the title to the stock should pass to Gills. But now two things were left to be done. One was the delivery of the stock and the other was the payment of a price, which, before its payment, was to be ascertained by the weight of the cattle. It is not said in so many words that the cattle were to be weighed, but manifestly, there was no other manner by which the price of the cattle could be ascertained. It is not stipulated which party should weigh them, but they were to be in the care and control of George and, so far as the form of this contract is concerned, he was to be the vendor; he was to sell the property back to Gills and was to receive for the property five cents for every pound, subject to the shrinkage of the aggregate weight of three per cent.

A large number of cases have been cited to us bearing upon the question as to the effect of such conditions in sales. The question has often arisen as to when a sale is executory and when one becomes executed, when the title passes.

At the time of this fire, the 14th of May, the day before the beginning of the period during which the weight of the cattle was to be ascertained, and the stock turned over to Mr. Gills, the weight of the stock had not been taken. George was to be permitted to subtract from the price which he had agreed to pay as the purchase-price of the stock when he received them, the price which would be due to him from Gills upon the reselling. His right was somewhat in the nature of a recoupment or counterclaim, which must be ascertained in some way before it could be subtracted from the amount which was at that time owing, though not yet due, from him to Gills.

In the 13 C. C. Rep., 631, is the case of *Parker* v. *Davis*, decided by this court while Judge Haynes, Scribner and King were upon the bench, Judge Haynes announcing the opinion. This was a sale of a certain stock of goods and chattels, and the price was fixed by an inventory taken, not entirely by the vendor, but by third persons, selected by both vendor and vendee, and it was held that when the price of the stock had been fixed by the taking of the inventories, and not before, the title passed.   On page 639, Judge Haynes says:

"Without going through the charge of the court, it is sufficient to say that the court, in our judgment, properly took this view of the case; that under this arrangement and agreement, there must have been not only the inventory taken of the goods —the amount ascertained—but that the notes and mortgages must have been given, and everything must have been done between the parties before the title would pass, or before there would be any risk in regard to the loss on the part of Davis."

This was a sale by Parker to Davis.   Now, it has been somewhat of a question sometimes as to whether delivery is not essential to the passing of the title.   We think, however, that under the decisions in Ohio this is not the rule, although there is some language in the case of *Ormsbee* v. *Machir*, 20 O. S., 295, which might tend to favor it.   On page 306, however, the court substantially adopts the rule asserted by Mr. Benjamin in his work on sales," viz:

"When there has been no manifestation of intention, the presumption of law is that the contract is an actual sale, *if the specific thing is agreed on,* and it is ready for immediate delivery; but that the contract is only executory when the goods have not been specified, or if, when specified, something remains to be done to them by the vendor, either to put them in a deliverable shape, or to ascertain the price."

Now, it will be noted here, as in very many of the cases cited, that the expression is used "where something remains to be done by the vendor," and it is not stated in this writing whether the weighing was to be done by the vendor or by the vendee. Presumably it was to be done by the vendor, because he was to have the care and possession of the stock, but in the case of

*Parker* v. *Davis, supra,* the inventory was not to be taken by either vendor or vendee, but it was to be taken by them conjointly through the medium of persons chosen by them both, and still the court held that the title would not pass until the completion of the inventory. Judge White, who gave the opinion in *Ormsbee* v. *Machir, supra,* on pages 306-7, says:

. "But in the present case the plaintiffs engaged to deliver the corn at a future time, at a given place, and it was only to be paid for as fast as delivered at that place. The payment and delivery were to be concurrent acts. If there was no delivery, nor what was equivalent to a delivery, there was to be no payment. This consideration, in our opinion, repeals the idea of the property passing to the purchaser at the date of the contract."

I say that that tends somewhat in the direction of the holding that delivery was essential to the passing of the title as well as the inventory or weighing, but I hardly think that is the rule as generally held by the authorities of this state, or elsewhere. There is a case in the 16th O. S., 509, which seems to hold to the contrary, and without stopping to read through them I might cite for such reference as may be proper the case of *Bellefontaine* v. *Vassaux,* 55 O. S., 323, and *Bonham* v. *Hamilton,* 66 O. S., 82. Our judgment is that it is impossible to ascertain by any evidence in the case—it is not apparent from the agreed statement of facts—and in the nature of things it can hardly be ascertained now, what these cattle weighed on the 14th of May. The ascertainment indeed was not to be made as of the 14th of May; it was to be taken at some time between the 15th of May and the 15th of June. It was during that period that the price was to be determined by the weight of the cattle, and nineteen of the cattle were destroyed upon the day before the beginning of the period. The price which was to be paid by George to Gills had already been settled as conclusively as if he had given a promissory note for the amount. In the first part of this contract we have words almost equivalent to a promissory note, except that the time of payment is not quite certain. The time of payment was to be between certain dates, and it was to be at the time of the redelivery of the cattle to

Gills, but there is no other condition annexed to the contract of George that he will pay the $709.06.

Now, he would be entitled to apply as against the price which he was to pay, whatever might become due from Gills to him upon return of the cattle, but he never in fact returns them. He does not surrender them to Gills; they are not taken back because he is not ready to deliver them. It may be no fault of his; he may have given them the best of care; it may have been an event which he could not help. One of the parties must suffer, and our judgment is that under the rules of law which pertain to a contract such as this, and a transaction such as has been disclosed to us, the loss must fall upon George; he had become the owner of the stock. It does not answer this proposition to say that he had no power of disposition. We think that he had, subject to the right of Gills to sue him for breach of the contract on his part to deliver the stock at the period mentioned. We think that they might have been subject to levy upon a claim against George during this time; that the title was in substantially the state in which it would have been if the herd had belonged to George in the first instance, and he had made the kind of a contract which he makes in the second part of this agreement with Gills. He was the legal owner of the stock. He made a contract that at a certain time he would sell so many cattle, for a price to be ascertained by weight, to Gills, and before that time arrived, and while the stock still remained his property, this unfortunate accident occurred, and we see no way out of the difficulty for him except to suffer the loss, which naturally falls upon him, under all the circumstances. We think that the judgment of the court below, which adopted the other version of this contract, and treated this transaction as a bailment, should be reversed, and under the agreed statement of facts and the pleadings, that a judgment should be entered in this court accordingly. It is, therefore, entered for the plaintiff, Gills, in the sum of $709.06, and interest.

*James O. Troup,* for plaintiff. .

*Baldwin & Harrington,* for defendant.